UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | Case No. 1:06-CR-113 |
| v. | ) | |
| | ) | Chief Judge Curtis L. Collier |
| | ) | |
| EARL McELHENEY | ) | |

## SENTENCING MEMORANDUM

Upon remand from the United States Court of Appeals for the Sixth Circuit, the Court held a hearing on June 17, 2009, to determine the sentence of Defendant Dr. Earl McElheney ("Defendant"), who stood convicted of one count of receiving child pornography. Defendant's initial sentence was to a term of imprisonment of 135 months, which was at the bottom of his United States Sentencing Guidelines ("Guidelines") range. Since Defendant's initial sentence, two developments have occurred that convinced the Court to impose a non-Guidelines sentence of imprisonment for 78 months. Most important, a growing number of courts have questioned the reliability of the child pornography Guidelines. In addition, a new psychosexual assessment determined Defendant's risk to reoffend is low.

## I.    PROCEDURAL BACKGROUND

Defendant was indicted by a grand jury on 44 counts of knowingly receiving or possessing child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A), (a)(5)(B). He was arrested on October 24, 2006, and released on bond, but was arrested for violation of his bond conditions on December 4, 2006, and detained. Defendant entered into a plea agreement and pleaded guilty to count 40 of the indictment on February 22, 2007 (Court File Nos. 31, 32). The agreed factual basis

stipulated child pornography images were found on Defendant's computer at his workplace, which was password protected.

The parties filed a joint motion for a psychosexual evaluation, which was granted (Court File Nos. 25, 31). The Center for Individual and Family Effectiveness completed the examination, which was forwarded to the Court and counsel for the defendant and the government.

The Court held a sentencing hearing on September 27, 2007, and, after ruling on Defendant's objections to the presentence report ("PSR"), sentenced Defendant to 135 months of imprisonment, supervised release for life, a $25,000 fine, and a $100 special assessment (Court File No. 75). The government moved to dismiss the remaining counts, which motion was granted. Defendant's motion to self report to prison was denied. The full circumstances of Defendant's sentencing are recounted in the Court's original sentencing memorandum. *United States v. McElheney*, 524 F. Supp. 2d 983 (E.D. Tenn. 2007).

On appeal, the Sixth Circuit vacated Defendant's sentence, *United States v. McElheney*, 310 F. App'x 857 (6th Cir. 2009), and remanded for resentencing in light of the Supreme Court's decision in *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586 (2007), which altered circuit case law and held district courts need not justify substantial deviations from the advisory Guidelines range with extraordinary circumstances. 128 S. Ct. at 596.

Because of the Court's concern that recent litigation in the federal courts raised questions as to the deference that should be accorded the Guidelines governing child pornography, the Court ordered the parties to file briefs regarding "whether the applicable sentencing guidelines are indicative of the sentences actually being imposed in these cases." (Court File No. 88). Both parties filed multiple memoranda (Court File Nos. 89, 91, 93, 94, 96, 97, 100, 101, 102, 103, 105, 106, 107,

108, 109, 110).

## II.     THE COURT'S POST *BOOKER* SENTENCING METHODOLOGY

After the Supreme Court decided *United States v. Booker*, 543 U.S. 220 (2005), making the

Guidelines advisory, the Court announced the methodology it will typically follow in arriving at a

sentencing decision.  *United States v. Phelps*, 366 F. Supp. 2d 580 (E.D. Tenn. 2005); *see also*

*McElheney*, 524 F. Supp. 2d at 986-87 (finding *Phelps* in line with Sixth Circuit and Supreme Court

precedent); *United States v. Swafford*, 2008 WL 5204064 (E.D. Tenn. Dec. 11, 2008) (reaffirming

the *Phelps* methodology in light of *Kimbrough*).  That methodology involves a three-step sentencing

process.  As a first step the Court determines the proper advisory Guidelines range.  *Gall*, 128 S. Ct.

at 596 ("a district court should begin all sentencing proceedings by correctly calculating the

applicable Guidelines range"); *see also United States v. Bolds*, 511 F.3d 568, 579 (6th Cir. 2007)

(noting the Guidelines are the benchmark of sentencing analysis).  To make this determination the

Court often will have to resolve objections to the PSR's Guidelines calculations as well as any

factual disputes.

The second step requires the Court to determine whether, pursuant to the United States

Sentencing Guidelines Manual, any departures from the advisory Guidelines range apply.  USSG

ch. 5, pt. K; *Phelps*, 366 F. Supp. at 586.  The Court considers arguments and motions filed by the

parties for upward or downward departures under the Guidelines or the Sentencing Commission's

policy statements.  18 U.S.C. § 3553(a)(4), (5).

After the Court has determined the proper Guidelines range and decided the appropriateness

of any departures, the Court must identify the appropriate sentence in light of the factors set forth

in 18 U.S.C. § 3553(a). *Phelps*, 366 F. Supp. at 586. This is based on an "individualized assessment based on the facts presented." *Gall*, 128 S. Ct. at 597. The court may impose a sentence within the applicable Guidelines range (after any clearly applicable departures) if such is consistent with the court's consideration of the § 3553(a) factors, or impose a non-Guidelines sentence if such is justified by the § 3553(a) factors. *See United States v. Vonner*, 516 F.3d 382, 387 (6th Cir. 2008) (en banc). A non-Guidelines sentence need not be supported by factors that would have justified a departure under the old, mandatory regime. However, departure case law is helpful in determining whether a Guidelines sentence is appropriate and in assisting the Court in determining the appropriate sentence.

## III. DEFERENCE DUE GUIDELINE § 2G2.2

### A. Introduction

As the Court noted earlier, two developments occurred since Defendant's initial sentencing. First, and the most crucial, courts across the country have been questioning the Guidelines on child pornography and increasingly imposing non-Guidelines sentences. Second, Defendant underwent a recent psychosexual examination and the psychologist provided an opinion that Defendant was at low risk to reoffend.

The Court had invited counsel to file briefs on the first issue and cited two cases in its order: *United States v. Beiermann*, 599 F. Supp. 2d 1087 (N.D. Iowa 2009), and *United States v. Stern*, 590 F. Supp. 2d 945 (N.D. Ohio 2008). Because the Court deemed this the most important issue in the sentencing hearing, the Court took up this issue with counsel first and will discuss it first here.

### B. The Institutional Role of the Sentencing Commission

4

Congress established the United States Sentencing Commission ("Sentencing Commission" or "Commission") with the goals of (1) establishing "sentencing policies and practices" that "(A) assure the meeting of the purposes of sentencing as set forth in [18 U.S.C. § 3553(a)(2)]; (B) provide certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities . . . ; and (C) reflect, to the extent practicable, advancement in knowledge of human behavior as it relates to the criminal justice process;" and (2) developing "means of measuring the degree to which the sentencing, penal, and correctional practices are effective in meeting the purposes of sentencing." 28 U.S.C. § 991(b).

The Sentencing Commission thus occupies an institutional role in developing Guidelines that are developed by a professional staff and are based on empirical evidence. *Gall*, 128 S. Ct. at 594 ("For even though the Guidelines are advisory rather than mandatory, they are, as we pointed out in *Rita*, the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions.")(citing *Rita v. United States*, 551 U.S. 338, 349-50 (2007)).

> [W]e have nevertheless preserved a key role for the Sentencing Commission. As explained in *Rita* and *Gall*, district courts must treat the Guidelines as the "starting point and the initial benchmark[.]" Congress established the Commission to formulate and constantly refine national sentencing standards. Carrying out its charge, the Commission fills an important institutional role: It has the capacity courts lack to "base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise."

*Kimbrough v. United States,* 552 U.S. 85, 128 S. Ct. 558, 574 (2007) (citations omitted).

As described in Chapter One, Part A, of the Guidelines, the Sentencing Commission's objectives in creating the Guidelines were to clarify the sentence imposed, create reasonable uniformity in sentencing, and impose proportionality in sentences. USSG § 1A1, pt. 3 (The Basic

5

Approach). To accomplish these objectives, the Sentencing Commission used an empirical approach whereby it analyzed data from presentence investigations and criminal statutes among other sources. *Id.* The Guidelines emerged as both descriptive, since they resulted from the accumulation of statistical analyses, and prescriptive, since district courts were initially required to follow the Guidelines.

###    C.    The Descriptive/Prescriptive Function of the Guidelines

When the Sentencing Commission functions in its institutional role, utilizing its professional staff and basing its determinations on empirical data and national experience, the Guidelines, even though advisory, should reflect the sentencing experiences taking place across the nation. In other words, Guidelines developed in this fashion should accurately describe national sentencing practices. When the Guidelines are developed through empirical analysis, sentencing judges can rely on them to approximate the § 3553(a) factors in a typical case. Since both the sentencing judge and the Sentencing Commission are guided by § 3553(a), in a mine-run case, an empirically based Guidelines range should approximate a sentence that meets Congress's sentencing goals. *Rita*, 551 U.S. at 347. When the Sentencing Commission fulfills its institutional role, the Guidelines for a typical case will accurately reflect the sentences being imposed across the nation. When the Sentencing Commission fulfills its institutional role, most sentences will be within the Guidelines range because the sentencing judge will agree with the Sentencing Commission's assessment of an appropriate sentence for a typical case. A Guidelines range that meets the § 3553(a) factors both prescribes the type of sentence that is appropriate in a generic case and describes the sentence an individual judge will impose for a typical defendant.

To the extent the Guidelines accurately describe national sentencing practices, a sentencing

6

judge can be comfortable relying upon the Guidelines as properly accounting for the § 3553(a) factors. In such a situation, the Sentencing Commission and individual judges, nationwide, have concurred as to the appropriate sentence in a typical case. *See Rita*, 551 U.S. at 350. Thus, a sentencing judge can give the Guidelines recommendation substantial weight in considering the statutory factors. The Guidelines therefore fulfill a predictive or prescriptive function.

### D. The Normative Function of the Guidelines

The Guidelines also serve a normative function, that is, to the extent the Guidelines accurately describe the sentencing practices across the country, the Guideline become a reliable measure of an appropriate sentence. In such cases, the majority of sentences will fit within the Guidelines range and a sentencing judge can rely on the Guidelines to approximate an appropriate sentence for an individual defendant in light of other defendants across the country who have committed similar offenses and have similar criminal histories. *United States v. Rochon*, No. 07-5429, 2009 WL 792893, *3 (6th Cir. March 27, 2009) ("Considering that one of the fundamental purposes of the Guidelines is to help maintain national uniformity in sentences, and considering that most sentences are within the Guidelines, the Guidelines themselves represent the best indication of national sentencing practices") (quoting *United States v. Houston*, 529 F.3d 743, 752 (6th Cir. 2008) (internal quotation marks omitted)). This reduces the possibility of unwarranted sentencing disparities. While eliminating nationwide disparities is difficult for an individual judge, the Sentencing Commission's professional staff analyzes sentencing data to assess relevant similarities and dissimilarities in sentencing. Where the Guidelines reflect this reasoned analysis, judges can rely on them to eliminate unwarranted disparities. In addition, when the Guidelines reflect the Sentencing Commission's institutional strengths, both the Sentencing Commission and the

7

sentencing judge will likely reach the same approximate sentence in a typical case. Therefore, the majority of cases should fall within an empirically grounded Guidelines range. Such empirically grounded Guidelines recommend sentences that fulfill the § 3553(a) factors and promote uniformity.

E.     The Evolutionary Nature of the Guidelines

The Sentencing Commission did not end its empirical analysis with the promulgation of the first Guidelines. Instead, the Guidelines continually change as the Sentencing Commission monitors and responds to what is happening in the district courts. The Guidelines were intended to evolve through periodic reviews and amendments. USSG § 1A2 (Continuing Evolution and Role of the Guidelines). Congress provided for this in 28 U.S.C. § 994(o), which requires the Sentencing Commission to periodically review and revise the Guidelines.

> The Commission's work is ongoing. The statutes and the Guidelines themselves foresee continuous evolution helped by the sentencing courts and courts of appeals in that process. The sentencing courts, applying the Guidelines in individual cases may depart (either pursuant to the Guidelines or, since *Booker*, by imposing a non-Guidelines sentence). The judges will set forth their reasons. The courts of appeals will determine the reasonableness of the resulting sentence. The Commission will collect and examine the results. In doing so, it may obtain advice from prosecutors, defenders, law enforcement groups, civil liberties associations, experts in penology, and others. And it can revise the Guidelines accordingly. See generally 28 U.S.C. § 994(p) and note following § 994 (Commission should review and amend Guidelines as necessary, and Congress has power to revoke or amend Guidelines).

*Rita*, 551 U.S. at 350. Thus, when national sentencing practices change, the Sentencing Commission can respond by amending the Guidelines and thereby fulfilling the descriptive function of the Guidelines and be a reliable indicator of the current sentencing practices in the field. This aids in maintaining the reliability of the Guidelines. If the Sentencing Commission fulfills this role, the Guidelines embody current sentencing practices and encompass the most recent developments in the field.

8

### F. Sentencing Commission's Institutional Role Is Not Embodied in Child Pornography Guidelines

As many other courts have noted, the child pornography Guidelines are not the product of the Sentencing Commission's professional staff and empirical evidence. *United States v. Stern*, 590 F. Supp. 2d 945, 960 (N.D. Ohio 2008) (collecting cases). The history of the child pornography Guidelines shows the Sentencing Commission's failure to use its institutional expertise in developing the child pornography Guidelines. The practices of sentencing courts in child pornography cases demonstrate the resulting sentencing disparities.

Although the Guidelines are advisory after *Booker*, courts still recognize the institutional strengths of the Sentencing Commission in crafting the Guidelines. *See, e.g.*, *Kimbrough v. United States*, 128 S. Ct. at 574-75. In determining a sentence to meet the factors in 18 U.S.C. § 3553(a), the Sentencing Commission has the benefit of empirical analysis and research, while the district court has experience with the individual defendant. *Rita*, 551 U.S. at 348 ("both the sentencing judge and the Commission [are] carrying out the same basic § 3553(a) objectives, the one, at retail, the other at wholesale"). When the Sentencing Commission is exercising its institutional strengths, the Guidelines reflect "a fair approximation of sentences that might achieve § 3553(a)'s objectives." *Id.* at 350.

Defendant essentially argues the Court should not apply the range recommended by USSG § 2G2.2 because it does not represent the Sentencing Commission's institutional strengths. In *Kimbrough*, the Supreme Court found the crack cocaine Guidelines "do not exemplify the Commission's exercise of its characteristic institutional role," because they evolved from the mandatory minimum sentences set by Congress and not empirical analysis. 128 S.Ct. at 575. Under *Kimbrough*, 128 S. Ct. at 575, and *Spears v. United States*, 129 S. Ct. 840, 843-44 (2009), district

9

courts have the discretion to categorically vary from the crack cocaine Guidelines even in "mine-run," or typical, cases. Defendant asserts the same arguments apply to child pornography.

Courts across the country have determined the recommendation of the Guidelines based on USSG § 2G2.2 is entitled to less weight because it is not the product of empirical analysis. *United States v. Phinney*, 599 F. Supp. 2d 1037, 1040 (E.D. Wisc. 2009) (collecting cases). The history of the development of the child pornography Guidelines is thoroughly evaluated in Troy Stabenow's article, "Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines" (hereinafter "Stabenow"), (January 1, 2009) *available at* http://www.fd.org/pdf_lib/child%20porn%20july%20revision.pdf, which has been cited by numerous courts. *See, e.g.*, *Phinney*, 599 F. Supp. 2d at 1041-43; *see also United States v. Beiermann*, 599 F. Supp. 2d 1087, 1100-04 (N.D. Iowa 2009) (collecting cases).

The Sentencing Commission drafted the Guidelines for child pornography without congressional input from 1987 to 1990. Stabenow, at 3-4. At that time, the base offense level was 13, with enhancements for the age of the minor and value of the images distributed. *Id.* at 4. In 1990, Congress criminalized possession of child pornography and directed the Sentencing Commission to amend the Guidelines to increase penalties for child pornography defendants. *Id.* The Sentencing Commission proposed adding a new section to address possession of child pornography, which had a base offense level of 10, and adding an enhancement for sadistic content for offenses involving selling or possessing with the intent to sell child pornography. *Id.* at 5-6. The Senate, however, interpreted the proposal as an attempt to lower penalties and directed the Sentencing Commission to increase penalties for child pornography defendants. *Id.* at 6-9. As a result, the Commission grouped all offenses other than simple possession into the same section,

increased the base offense level, and added a new enhancement for a pattern of activity involving the sexual abuse or exploitation of a minor. *Id.* at 9. In 1995, Congress again directed the Sentencing Commission to raise the base offense levels and to increase punishment for child pornography offenses involving a computer. *Id*. at 9-12. Although the amendment applied to all child pornography defendants, discussion in Congress was limited to child pornography producers and mass distributors. *Id.* at 11.

In 1996, in response to a directive from Congress, the Sentencing Commission submitted a report concerning sex offenses against children, reviewing 112 child pornography cases, which represented approximately a third of the child pornography cases prosecuted during the time frame. *Id*. at 13. The report focused on the most dangerous offenders and occurred at a time when federal prosecution of child pornography defendants was limited to egregious offenders. *Id.* A significant portion of the offenders studied by the Sentencing Commission had criminal histories, including convictions for sexual abuse or exploitation of children, whereas in 2006, almost 80 percent of child pornography defendants had no criminal history. *Id.* at 14. Congress repeatedly intervened in the development of the Guidelines for child pornography in subsequent years, mandating a two-level enhancement for use of a computer and broadening the definition of distribution of pornography. *Id*. at 15-19. The Feeney Amendment and the PROTECT Act, which are also discussed below, directly amended the Guidelines for child pornography by adding enhancements for the number of images possessed. *Id.* at 21. In 2004, the Sentencing Commission reworked the Guidelines for child pornography to reflect increased mandatory minimum penalties and reconcile the changes made by the PROTECT Act. *Id.* at 24-25. The increased penalties directed by Congress were generally imposed with "little or no debate." *United States v. Hanson*, 561 F. Supp. 2d 1004, 1009 (E.D.

Wisc. 2008).

Congressional involvement in the establishment of the child pornography Guidelines prevents the Sentencing Commission from performing its function of ensuring the child pornography Guidelines evolve. The Sentencing Commission ordinarily would periodically revise and amend the Guidelines based on empirical analysis, but cannot in the face of congressional enactments. As discussed below, despite increasing deviations from the child pornography Guidelines, the Commission cannot take into account these deviations and revise the Guidelines to account for the reasons for the deviations. This has led in part to the Guidelines no longer being descriptive or predictive.

The Sentencing Commission acknowledges the overwhelming congressional influence in the development of the child pornography Guidelines. United States Sentencing Commission, Fifteen Years of Guidelines Sentencing, at 72-73 (Nov. 2004), *available at* http://www.ussc.gov/15_year/15_year_study_full.pdf ("The frequent mandatory minimum legislation and specific directives to the [Sentencing] Commission to amend the guidelines make it difficult to gauge the effectiveness of any particular policy change, or to disentangle the influences of the Commission from those of Congress."). Courts have also recognized the Guidelines for child pornography are the result of congressional mandates rather than empirical analysis and have accorded them less weight as a result. *See, e.g.*, *Phinney*, 599 F. Supp. 2d at 1041-43. Recently, the Sentencing Commission published notice of its intent to review the "incidence of, and reasons for, departures and variances from the guideline sentence" and compile "studies on, and analysis of, recidivism by child pornography offenders." United States Sentencing Commission, Notice of Proposed Priorities and Request for Public Comment, 74 Fed. Reg. 29737, 29738 (June 23, 2009)

(identifying "[r]eview of child pornography offenses, and possible promulgation of guideline amendments and/or a report to Congress as a result of such review" as a proposed priority policy for the amendment cycle ending in May 2010).

As in the crack cocaine Guidelines addressed in *Kimbrough* and *Spears*, the Sentencing Commission did not use an empirical approach to develop the child pornography Guidelines, but instead responded to congressional directives. *Kimbrough* and *Spears* both only addressed the district judge's discretion with regard to the disparity between sentences for crack cocaine and powder cocaine offenses. The extent to which the Supreme Court's reasoning applies to similarly deficient Guidelines remains unclear. The Court of Appeals for the First Circuit extended *Kimbrough*'s reasoning to the disparities created by selective placement in fast-track programs for immigration cases. *United States v. Rodriguez*, 527 F.3d 221, 227 (1st Cir. 2008). In a Seventh Circuit opinion, the court determined the child pornography Guidelines, like the crack cocaine Guidelines addressed in *Kimbrough*, were not based on a nationwide empirical study of criminal sentencing. *United States v. Huffstatler*, --- F.3d ---, No. 08-2622, 2009 WL 1855161, *2 (7th Cir. June 30, 2009) (declining to decide whether *Kimbrough* allows district courts to disagree with child pornography Guidelines on policy grounds). The Sixth Circuit, however, has refused to determine whether *Kimbrough*'s rationale extends to child pornography offenses. *United States v. Grossman*, 513 F.3d 592, 597-98 (6th Cir. 2008). Because the court found the sentence imposed was based on an individualized assessment of the 18 U.S.C. § 3553(a) factors and not the district court's disagreement with some of the child pornography enhancements, the court did not decide the extent of the district court's discretion. *Id.* However, the court asserted the district court could not have imposed a non-Guidelines sentence solely on the belief the Guidelines enhancements were

duplicative. *Id.* at 597. Thus, in the Sixth Circuit, it is unclear whether district courts have the authority to categorically impose non-Guidelines sentences for offenses other than crack cocaine. *See United States v. Vandewege*, 561 F.3d 608, 610 (6th Cir. 2009) (Gibbons, J., concurring) ("Neither *Kimbrough* nor *Spears* authorized district courts to categorically reject the policy judgments of the Sentencing Commission in areas outside of crack-cocaine offenses").

In a recent case, the Sixth Circuit applied the rebuttable presumption of reasonableness to the child pornography Guidelines for a within-Guidelines sentence where the defendant argued he received disparate treatment in light of the number of downward departures and/or variances in child pornography cases. *United States v. Rochon*, No. 07-5429, 2009 WL 792893, *2-3 (6th Cir. March 27, 2009). The court determined the Guidelines were still the best indication of national sentencing practices. *Id.* at *3. However, courts are increasingly issuing non-Guidelines sentences in child pornography cases. The Sentencing Commission's preliminary cumulative data report for October 1, 2008, through March 31, 2009, indicates judges gave within-Guidelines sentences in approximately 46 percent (368 of 792) of cases decided under USSG § 2G2.2. United States Sentencing Commission, Second Quarter Fiscal Year 2009 Quarterly Sentencing Update, at 13 (June 19, 2009), *available at* http://www.ussc.gov/sc_cases/USSC_2009_Quarter_Report_2nd.pdf. District judges gave above-Guidelines sentences in only 17 cases and varied downward in 281 cases. *Id.* While this data is not final, it appears the Guidelines are no longer descriptive of national sentencing practices when more then half of all child pornography defendants are being sentenced outside the advisory Guidelines range.

In the 2008 fiscal year (October 1, 2007 through September 30, 2008), slightly more than half (718 of 1,335) of child pornography defendants sentenced under USSG § 2G2.2 received

14

within-Guidelines sentences. United States Sentencing Commission, 2008 Sourcebook of Federal Sentencing Statistics, p. 79, tbl 28 . Twenty-six child pornography defendants received above-Guidelines sentences. *Id.* Thirty received government-sponsored downward departures based on substantial assistance. *Id.* Judges imposed downward non-Guidelines sentences in 390 child pornography cases in fiscal year 2008. *Id.* Although it is impossible to tell how many of the defendants in those cases were similarly situated to Defendant, it does not appear the Guidelines are still a major force in helping to avoid "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

The Sixth Circuit recently addressed this issue in *United States v. Mikowski*, No. 08-1791, 2009 WL 1546375 (6th Cir. June 3, 2009), where the defendant argued the child pornography Guidelines were fatally flawed. *Id.* at *5. Looking at the 2007 Sentencing Commission Sourcebook, which indicated 34 percent of child pornography defendants received below-Guidelines sentences, the circuit court rejected his argument, asserting two-thirds of child pornography defendants were receiving within- or above-Guidelines sentences and comparing the descriptiveness of the child pornography Guidelines with Guidelines for other federal crimes. *Id.* at *5 n.7. In footnote seven, the court went on to list below-Guidelines rates for several other federal offenses. However, unlike several of the Guidelines listed by the circuit court in *Mikowski*, which covered a broad range of conduct, the ways of committing the offense of receipt of child pornography are very limited. For example, unlawfully remaining or entering in the United States, § 2L1.2, with a 41% below-Guidelines rate, includes, as the Government conceded defendants sentenced under the Department of Justice's Fast Tract Program which would account for the large below-Guidelines rate. The Government also conceded the below-Guidelines rate for misprision of a felony, 18 U.S.C. § 4,

15

USSG § 2X4.1, with a 31% below-Guidelines rate is also easily explained because misprision of a felony is often used in plea agreements to reward defendants who cooperate with the government and can includes a wide variety of offenses, from the most serious to the most minor. The factual differences among child pornography cases, on the other hand, are limited. It is noteworthy the defendant in *Mikowski* received a non-Guideline sentence and this sentence was not disturbed. The court concluded by holding "Mikowski's below-guideline sentence is substantively reasonable." *Id.* at *6.

### G. Conclusion

The Court agrees with those courts that have concluded the child pornography Guidelines are due less weight than empirically based Guidelines. However, the Court parts company with those courts that categorically reject the child pornography Guidelines. *See, e.g.*, *Beiermann*, 599 F. Supp. 2d at 1104. While these Guidelines less accurately describe what is taking place nationally in sentencing, they do provide some assistance.

With empirically based Guidelines, the Court accords the Sentencing Commission's determination considerable weight in the § 3553(a) factors of retribution and general deterrence. *Swafford* 2008 WL 5204064 at *9, *11; *McElheney,* 524 F. Supp. 2d at 1003, 1005; *Phelps,* 366 F. Supp. 2d at 588. The Court accorded this deference because the Court decided the Sentencing Commission, through its professional staff and empirical research, was better positioned to assess these two factors than the Court. However, where the Sentencing Commission is not making a professional judgment, obviously that degree of deference is not warranted.

Because the child pornography Guidelines are not as reliable as when the Court first sentenced Defendant, the Court must again perform its sentencing analysis, taking into account the

flaws in the child pornography Guidelines. The overriding requirement is that the Court impose a sentence that is sufficient but not "greater than necessary" to comply with the § 3553(a) factors.

## IV.    DISCUSSION

### A.    Advisory Guidelines Range

The probation office calculated Defendant's advisory Guidelines range in the presentence report ("PSR"). Defendant's base offense level is 22 for receipt of child pornography. USSG § 2G2.2(a)(2). Since Defendant did not intend to traffic in or distribute the material, his offense level is reduced by two. *Id.* § 2G2.2(b)(1). Several of the images from Defendant's computer involved prepubescent minors or minors under the age of 12, so two levels are added. *Id.* § 2G2.2(b)(2). One of the videos contained an adult male forcing a female minor, who appears to be crying, to perform oral sex on him. Since this is a depiction of sadistic behavior, four levels are added. *Id.* § 2G2.2(b)(4). Two levels are added because the offense involved the use of a computer. *Id.* § 2G2.2(b)(6). The offense involved at least 178 images and 23 videos portraying child pornography. Since "[e]ach video . . . shall be considered to have 75 images," *Id.* § 2G2.2, cmt. n.4(B)(ii), and Defendant possessed 23 videos, the number of images exceeded 600 and five levels are added. *Id.* § 2G2.2(b)(7)(D). Defendant directed his sister and his nurse to remove his computer equipment in an attempt to hinder law enforcement investigation. Since this is an obstruction of justice, two levels are added. *Id.* § 3C1.1. Defendant received a two-level decrease for acceptance of responsibility, since he agreed with the factual basis. *Id.* § 3E1.1(a). Defendant's total offense level is 33. With no criminal history, establishing a criminal history category of I, Defendant's advisory Guidelines range is 135 to 168 months.

Defendant renewed several of his objections to this sentencing range (Court File No. 94).[1] Defendant objects to the enhancement for images of minors under the age of 12, which led to a two-level increase pursuant to USSG § 2G2.2(b)(2). Defendant argues the two-level enhancement for use of a computer should not apply. USSG § 2G2.2(b)(6). Defendant also contends the enhancement for having a total of more than 600 images should not apply. USSG § 2G2.2(b)(7)(D). Defendant also objects to the enhancement for possession of a video portraying sadistic behavior, which led to a four-level increase pursuant to USSG § 2G2.2(b)(4). Defendant possessed three videos that depicted sadistic behavior. Two showed an adult forcing a child to have oral sex and one showed an adult attempting to force penetration on a female child, age two or three. The Sixth Circuit has held "penetration of a prepubescent child by an adult male constitutes inherently sadistic conduct." *United States v. Groenendal*, 557 F.3d 419, 426 (6th Cir. 2009). Defendant does not dispute the facts provided by the government and set forth in the PSR. At the resentencing hearing, the Court made factual findings that Defendant used a computer and received more than 600 images, including depictions of prepubescent minors and sadistic behavior as defined in the Guidelines and *Groenendal* and overruled Defendant's legal objections to the enhancements.

Defendant argues he should receive a reduction of four levels for being a minimal participant or, in the alternative, a two-level reduction for being a minor participant under USSG § 3B1.2 (Court File No. 96). In *Groenendal*, the Sixth Circuit remanded a denial of § 3B1.2 application in a child pornography trafficking case, reasoning the offense of trafficking necessarily involves more than

---

[1] The Court reaffirms its rulings as outlined in the original sentencing memorandum. *McElheney*, 524 F. Supp. 2d at 996-99, 1000-02 (addressing Defendant's objection to the Guidelines conversion factor for videos, Defendant's arguments concerning the constitutionality and application of the mandatory minimum, the constitutional challenge to the disparity between possession and receipt of child pornography, and the Eighth Amendment challenge to the sentence).

one person and the district court should determine whether the defendant has shown he was a minimal or minor participant. 557 F.3d at 427. To warrant application of the adjustment for mitigating role, Defendant must show he was substantially less culpable than the average participant. USSG § 3B1.2 cmt. n.3. Under the Guidelines, a participant is "a person who is criminally responsible for the commission of the offense." USSG § 3B1.1 cmt. n.1. As the court in *Groenendal* stated, the other participants need not be charged with the crime to be involved in relevant conduct. 557 F.3d at 426 (citing *United States v. Allen*, Nos. 06-1318/1496, 2007 WL 2446013 at *7 (6th Cir. Aug. 29, 2007)). However, the burden is on Defendant to establish he is entitled to the role adjustment by a preponderance of the evidence. *Id.* at 427. Unlike the defendant in *Groenendal*, Defendant is charged only with receiving child pornography. While it is conceivable others were involved in or participated in the offense, the Court knows of no such person or persons and Defendant could not name anyone. Defendant failed to identify other participants with whom the Court could compare Defendant on anything but a speculative level. While Defendant is certainly less culpable than the average mass producer of child pornography, Defendant produced no evidence concerning the culpability of any other participants in his offense.

Having overruled Defendant's objections to the PSR, the Court found the PSR accurately calculated the Guidelines range. As stated above, Defendant's offense level is 33 and his criminal history category is I, which establishes a Guidelines range of 135 to 168 months.

## B.      Departure

Defendant argues for a downward departure under USSG §§ 5K2 and 5C1.2. As Defendant notes, the Court's authority to depart under the Guidelines is limited in child crimes. Defendant was convicted of violating 18 U.S.C. § 2252A, which is an offense under chapter 110 of Title 18 of the

United States Code, and is included in the definition of "child crimes and sex offenses" in the Guidelines. USSG § 5K2.0, cmt. n.4(A). Thus, the Court can only depart from the Guidelines based on permissible grounds enumerated in Part K of Chapter Five. *Id.* § 5K2.0(b).[2] Defendant contends the limitations on the Court's discretion to depart under the Guidelines is unconstitutional and violates the separation of powers clause. The Prosecutorial and Other Tools to end the Exploitation of Children Today Act ("PROTECT Act") restricted the ability of district courts to depart downward under the Guidelines in child pornography cases. The Sixth Circuit upheld the PROTECT Act against a separation of powers challenge in *United States v. Salazar*. 185 F.App'x 484 (6th Cir. 2006). Although no Sixth Circuit case has addressed the Feeney Amendment, the Court of Appeals for the Third Circuit determined the Feeney Amendment, which is part of the PROTECT Act and modified several aspects of the Guidelines including the composition of the Sentencing Commission, was constitutional in light of *Booker*. *United States v. Coleman*, 451 F.3d 154, 158 (3d Cir. 2006). As the *Coleman* court noted, the federal district court case finding the Feeney Amendment unconstitutional, *United States v. Detwiler*, 338 F. Supp. 2d 1166 (D. Or. 2004), was decided under a mandatory Guidelines regime and the same reasoning does not apply following *Booker*. *Coleman*, 451 F.3d at 158. The Court finds the *Coleman* reasoning persuasive and finds no separation of powers problem with the restrictions on the district court's ability to depart downward in the advisory Guidelines. As the Court noted in the original sentencing memorandum, Defendant provided no reason for the Court to grant a downward departure. *McElheney*, 524 F. Supp. 2d at

_____

[2]Defendant argues the Court should consider mitigating circumstances not taken into account by the Sentencing Commission, as listed in USSG § 5K2.0(b)(2). However, subsection (2) is one of three elements that must be met before the Court is allowed to depart downward under the Guidelines. The Court will interpret Defendant's arguments for a downward departure based on impermissible grounds as an argument for a non-Guidelines sentence under the 18 U.S.C. § 3553 factors and will address them below.

997.  A downward departure is not warranted.

### C.     Imposition of a Sentence

Federal sentencing is now governed by Title 18, U.S. Code, § 3553(a).  Section 3553(a)

requires sentencing courts to consider seven factors:

(1)     the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)     the need for the sentence imposed –
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the sentencing range established by the guidelines;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

After considering all of these factors, a court must "impose a sentence sufficient, but not greater than

necessary, to comply with the purposes set forth in paragraph 2."  18 U.S.C. § 3553(a).

### 1.     Nature And Circumstances of the Offense

The full circumstances of Defendant's offense are recounted in the Court's original

sentencing memorandum, *McElheney*, 524 F. Supp. 2d at 989-91, and are only briefly addressed

here. A technician at Defendant's workplace discovered child pornography on Defendant's

computer.  The FBI examined the computer and found at least 80 images and 23 videos depicting

child pornography. Defendant was terminated and started a private practice. After Defendant was arrested and released on bond, Defendant violated the terms of his release and again accessed child pornography. The FBI searched his home computer and found at least 64 images of child pornography. Defendant was rearrested for violating his bond conditions. From jail, Defendant called his nurse and told her to remove his office computer, which she did. At Defendant's request, his sister delivered the computer to Defendant's then attorney. Defendant had cryptic phone conversations with his nurse and sister about concealing the child pornography. When the FBI searched that computer, it found an additional 34 images of child pornography. Some of the images were of young children being forced into sex acts.

Defendant downloaded multiple images of child pornography and continued to do so even after being indicted for the instant offense. However, he did not produce or distribute child pornography. In addition, there is no evidence Defendant committed a hands on offense.

## 2. History and Characteristics of Defendant[3]

Defendant was born on September 29, 1956, in Atlanta, Georgia. He is close to his parents, who are willing to relocate to Chattanooga to assist Defendant's rehabilitation, and his sister, who lives in Atlanta, Georgia, and is a health care consultant and strategic planner. Defendant is divorced from Kimberly Carlton, who is also a physician and practices at Erlanger Medical Center. They have three children.

Defendant was employed as an orthopaedic surgeon, but was terminated from the Center for Sports Medicine and Orthopaedics following the incident leading to his arrest and opened a solo practice in June 2005, which closed after his conviction on the instant offense. Prior to his

---

[3]The Court's original sentencing memorandum, *McElheney*, 524 F. Supp. 2d at 991-93, fully details Defendant's history and characteristics.

incarceration, Defendant was active in the community. From June 2004 to August 2006, Defendant volunteered with Project Access to provide health care to uninsured low-income residents. He also provided sports medicine services to numerous sports teams.

Defendant submitted numerous letters and documents showing Defendant's post-sentencing conduct (Court File Nos. 97, 100). The Sixth Circuit has previously held rehabilitation efforts post-sentencing are irrelevant to a *Booker* remand. *United States v. Worley*, 453 F.3d 706, 709 (6th Cir. 2007). Since this case was remanded for reconsideration in light of *Gall*, post-sentencing events are irrelevant to the inquiry of whether the Court would have imposed a different sentence had the Sixth Circuit not required extraordinary circumstances for a non-Guidelines sentence at the time of Defendant's original sentencing.

### 3. Seriousness of the Offense

As the Court recognized in its original sentencing memorandum and does not repeat here, receipt of child pornography is an extremely serious offense. *McElheney*, 524 F. Supp. 2d at 1003-05. This offense involved at least 178 images and 23 videos portraying child pornography. Each image represents a victim whose life is irreversibly altered. Those who receive child pornography form a market for the images and encourage the further abuse of the children depicted in the images. By receiving child pornography, Defendant "enable[s] the production of child pornography and . . . the seriousness of the crime is reflected in the harshness with which Congress has chosen to treat it." *United States v. Cherry*, 487 F.3d 366, 368-69 (6th Cir. 2007). Congress has determined receipt of child pornography is a very serious offense. *See* 18 U.S.C. § 2252A(b)(1) (establishing the statutory range as five to twenty years imprisonment). The sentence the Court imposes should reflect the seriousness of the offense, promote respect for the law, and provide just punishment. The

23

Court finds that a sentence in the range of 60 to 100 months would fulfill this factor.

### 4. Deterrence

The Court must impose a sentence to afford adequate deterrence to people like Defendant who might engage in the receipt of child pornography. General deterrence is especially important in child pornography offenses because the Internet allows potential offenders to perpetrate the offense in the privacy of their homes, largely hidden from law enforcement. As the Court articulated in the original sentencing memorandum, since child pornography is a crime that is difficult to detect, deterrence is an important consideration in child pornography cases. *McElheney*, 524 F. Supp. 2d at 1005-06. The need for general deterrence has not changed since Defendant's initial sentencing. However, the weight the Court gives to the Guidelines' assessment of this factor has changed. The Court finds that the Guidelines' assessment of general deterrence is due less weight. In light of the sentences being imposed by other courts, the Court conclude a sentence in the range of 60 to 100 months would fulfill this factor. *See United States v. Goldberg,* No. 05-cr-0922, 2008 WL 4542957, *2-4 (N.D. Ill. April 30, 2008) (collecting cases and comparing sentences)

### 5. Protecting the Public

As the Court fully analyzed in the original sentencing memorandum, Defendant needs to be incapacitated for a period of time to prevent him from reoffending. *McElheney*, 524 F. Supp. 2d at 1006-07. Defendant submits he has been sufficiently punished by the loss of his family, reputation, and profession. In addition, Defendant asks the Court to consider that, during his presentence confinement, he was held in solitary confinement for his protection. However, even after Defendant was charged with 44 counts of child pornography offenses and was subject to release conditions, he continued to download child pornography in direct defiance and violation of

24

his releae conditions.  In addition, while Defendant has expressed his remorse at hurting his family and losing his freedom and reputation, Defendant's focus is on the severity of his punishment, not the nature of his offense.  Unlike the defendant in *Grossman*, Defendant does not appear to know "his actions against innocent children were 'legally and morally wrong' and . . . appreciat[e] that the true victims of his crimes were the innocent children." *United States v. Grossman*, 513 F.3d 592, 595 (6th Cir. 2008).  Defendant has not demonstrated he has "the understanding of a need to change and he has the ability to do so."  *Cherry*, 487 F.3d at 370 (internal quotation marks omitted).

There is no evidence to suggest Defendant has committed a hands on offense, or will commit one.  His psychological profile indicated Defendant is not a pedophile.  Thus, Defendant's sentence is based only upon a consideration of the offense he committed, receipt of child pornography, not the risk he may directly abuse a child in the future.  As the Court noted previously, Defendant's conduct while on bond and lack of a strong support system weigh in favor of incapacitation.  *McElheney*, 524 F. Supp. 2d at 1006-07.  Although Defendant's parents have offered to assist in his rehabilitation, the parent-child relationship is no substitute for peer support.

Defendant's initial psychological sex risk assessment showed generalized anxiety, adjustment disorder, and major depression.  One instrument suggested Defendant sees the world in terms of power and control and attempts to usurp power even through the use of manipulations.  The evaluation determined he prefers adult females and there was no indication he was at risk for committing a hands on offense.  His risk of reoffending was moderate to high.  The psychologist assessed Defendant as using pornography for self-gratification to compensate for feelings of helplessness and isolation.  Defendant does not abuse illegal substances or alcohol.  Defendant was reassessed on April 8, 2009, by Bertin Glennon, Ph.D. ("Dr. Glennon") at the request of Defendant's

attorney (Court File No. 94, Ex. 1). This psychosexual assessment used an IORNS instrument, which was not available at Defendant's previous sentencing. The IORNS instrument indicated Defendant was in a group with a low to moderate static risk of reoffense and a low dynamic risk. Dr. Glennon recommended cognitive behavioral treatment. Based upon Dr. Glennon's more recent assessment, the Court concludes Defendant poses less of a threat than the Court initially determined. Therefore, the Court's consideration of this factor has changed.

### 6. Rehabilitation

Defendant argues the Bureau of Prisons will be unable to provide him with needed treatment. He asserts the sex offender treatment provided by the Bureau of Prisons would be of little benefit to him, since he has not committed a hands on offense. As Defendant is highly educated, other rehabilitative measures are unnecessary. According to Dr. Glennon, with cognitive behavior treatment, Defendant will be very unlikely to reoffend. Defendant is in need of rehabilitative treatment and the Court anticipates Defendant will receive some treatment while in prison, although likely not until the last years of his sentence. In addition, Defendant will be able to participate in therapy once he is released from incarceration.

### 7. Consideration of Guidelines

As the Court noted in its original sentencing memorandum, the Sentencing Commission is in a better position than a district court to assess the general goals of § 3553(a), such as retribution and general deterrence. *McElheney*, 524 F. Supp. 2d at 1003, 1005-6. However, in light of the institutional deficiencies in the child pornography Guidelines, the Court gives them less deference than empirically grounded Guidelines. *See also Hanson*, 561 F. Supp. 2d at 1011 (concluding the range did not deserve deference, "given all of the flaws in the guidelines"). When the Sentencing

Case 1:06-cr-00113-TRM-SKL   Document 113   Filed 07/02/09   Page 26 of 33   PageID #: 785

Commission is not fulfilling its institutional role, courts cannot rely on the Guidelines to take into account empirical data and national experience. *See Kimbrough*, 128 S. Ct. at 575. *Kimbrough* emphasized the difference between empirically based Guidelines, which reflect § 3553(a) considerations, and Guidelines that do not exemplify the Sentencing Commission's institutional role. *Id.* While the Guidelines generally incorporate empirical analysis, where the Guidelines do not reflect the institutional strengths of the Sentencing Commission, it is incumbent upon sentencing courts to evaluate the degree of deference warranted. Since the child pornography Guidelines do not fully describe the current sentencing practices of district courts or adequately differentiate between the least and worst offenders, courts cannot rely fully on the child pornography Guidelines to be a reliable assessment of a sentencing range that approximates the § 3553(a) factors in a typical child pornography case. *Johnson*, 588 F. Supp. 2d at 1004. Based on the individual circumstances of Defendant, the Court finds the advisory Guidelines range yields a sentence at odds with the "parsimony" provision in § 3553(a).

### 8.    Sentencing Disparities

Although the Court does not categorically reject the child pornography Guidelines, the decision to impose a non-Guidelines sentence implicates the sentencing disparities the Guidelines generally assist courts in avoiding. As the Supreme Court noted in *Kimbrough*, Congress somewhat constrains "possible variations among district courts . . . by the mandatory minimums." 128 S. Ct. at 574. However, 18 U.S.C. § 3553(a)(6) directs district courts to consider the need to avoid unwarranted disparities. The Sixth Circuit has repeatedly held the sentencing disparities courts should avoid pursuant to U.S.C. § 3553(a)(6) are national disparities, not disparities among specific cases. *United States v. Simmons*, 501 F.3d 620, 623 (6th Cir. 2007). Nonetheless, "district courts

must take account of sentencing practices in other courts" to avoid disparities. *Kimbrough*, 128 S. Ct. at 574. The Court should consider the need to avoid "unwarranted disparities, but also . . . unwarranted similarities" among defendants who are not similarly situated. *Gall*, 128 S. Ct. at 600 (emphasis omitted).

As other judges have noted, while the statute creates a 15-year window for sentencing, the Guidelines recommend nearly all defendant be sentenced near the 20-year statutory maximum. *United States v. Grober*, 595 F. Supp. 2d 382, 393 (D.N.J. 2008) (quoting *United States v. Johnson*, 588 F. Supp. 2d 997, 1004 (S.D. Iowa 2008)); *Hanson*, 561 F. Supp. 2d at 1011 (commenting on Stabenow: "An offender who appeared fairly typical, one with no prior record, found himself in a guideline range that exceeded the statutory maximum"). Here, Congress has placed the maximum sentence at 20 years and has determined the minimum sentence should be five years. The Guidelines assess Defendant's conduct in the middle of the statutory range. However, further complicating the sentencing landscape is the existence of two separate offenses for child pornography with extremely different statutory ranges. Although the conduct leading to a conviction for receipt of child pornography may be identical to that for possession of child pornography, receipt carries a statutory range of five to twenty years, whereas possession carries only up to ten years imprisonment. 18 U.S.C. § 2252A(b)(1), (2). Thus, had Defendant been charged with possession for the same conduct, his Guidelines range would be above the statutory maximum sentence. *See United States v. Szymanski*, No. 3:08-cr-417, 2009 WL 1212252, *12-13 (N.D. Ohio April 30, 2009) (addressing the sentencing disparities created by separate mandatory minimums for possession and receipt of child pornography). This creates additional disparities among defendants with similar conduct and criminal histories.

28

Defendant's offense is certainly "mine-run" for child pornography. A district court in New Jersey credited a government agent's testimony of her experience with child pornography cases, based on 100,000 images from 180 collections, where the agent testified all of her investigations involved a possessor of 600 or more images, involved a computer, and showed images of prepubescent minors. *Grober*, 595 F. Supp. 2d at 397. She further testified 80 percent involved at least one image of sadistic content. *Id.* Based on these statistics, it appears Defendant is a typical child pornography offender. *See also* Stabenow at 27-28 (providing statistics for certain sentencing enhancements in child pornography cases). However, since the sentencing enhancements apply in almost all cases, the Guidelines range is not useful in distinguishing between the most and least culpable child pornography defendants. *Johnson*, 588 F. Supp. 2d at 1004 (noting the Guidelines made it difficult for the court to "differentiate between the punishment appropriate for the most and least egregious acts of child pornographers").

To adequately consider sentencing disparities, the Court must look to the practices of other courts. *Kimbrough*, 128 S. Ct. at 574. In doing so, the Court considers the rates of downward departures and variances granted in child pornography cases under USSG § 2G2.2 as opposed to within- or above-Guidelines sentences, as discussed above. In addition to the available decisions of other district courts, the statistics published by the Sentencing Commission show a widespread trend away from the Guidelines ranges suggested by USSG § 2G2.2. The court in *United States v. Goldberg* collected a variety of reported child pornography cases and was "struck by the inconsistency in the way apparently similar cases are charged and sentenced." No. 05-cr-0922, 2008 WL 4542957, *2-4 (N.D. Ill. April 30, 2008) (considering a wide range of district court and appellate cases before sentencing the defendant to 48 months imprisonment for possession). In the

case most factually similar to Defendant's case, the court in *Johnson* sentenced a defendant with a Guidelines range of 121 to 151 months to 84 months imprisonment, followed by 10 years of supervised release, where the defendant received more than 6000 images, was not a pedophile and presented a low risk of recidivism. 588 F. Supp. 2d at 1005. In *Hanson*, the court imposed a downward non-Guidelines sentence and sentenced the defendant to 72 months in prison with lifetime supervision and included alcohol and sex offender treatment, limitations on computer usage and contact with minors as special conditions to protect the public and rehabilitate the offender. 561 F. Supp. 2d at 1011. The court in *United States v. Stern* imposed a sentence of 12 months and one day, but noted the exceptional nature of the case, including the youth of the defendant and his attempts to seek therapy well in advance to being charged. 590 F. Supp. 2d 945, 952-63 (N.D. Ohio 2008) (sentencing the defendant for possession of child pornography, a lesser offense than receipt). "In the absence of defensible Guidelines, district courts are left without a meaningful baseline from which they can apply sentencing principles." *Id.* at 961. The sentencing practices of other courts demonstrate a Guidelines sentence would create disparities in this case.

### 9. Sentence

After considering all of the above factors, the Court determines a sentence within the Guidelines range is "greater than necessary" to achieve the goals of 18 U.S.C. § 3553(a). Therefore, the Court grants Defendant's motion for a downward variance and imposes a sentence of 78 months. Since Defendant's original sentencing hearing, the legal landscape of child pornography sentencing has changed. Given the history of USSG § 2G2.2, the Court cannot give the child pornography Guidelines as much weight as when the Commission is exercising its institutional strengths and using empirical analysis. Although the Court does not categorically reject the Guidelines for child

30

pornography, the goal of the Guidelines has been somewhat lost in child pornography offenses and the Guidelines range is greater than necessary to adequately address the goals of 18 U.S.C. § 3553(a) for this defendant.

Most of the factors in § 3553(a) have not changed since the Court first sentenced Defendant. Nothing has altered the nature and circumstance of the offense. Defendant's family has aged, his children have encountered problems, and Defendant has made use of his time in prison, but the Court's original assessment of his personal history is unchanged. Dr. Glennon has re-evaluated Defendant and now asserts Defendant's risk to reoffend is low. Although Dr. Glennon's experience with individuals whose only offense is child pornography is limited, the Court credits his statement and considers protection of the public less of a factor now than at Defendant's original sentencing. Dr. Glennon also contends Defendant would benefit from treatment and suggests Defendant can be completely rehabilitated, which weighs in favor of a lower sentence, although it is not a large factor in sentencing.

Since the Guidelines do not have the predictive or descriptive force in child pornography cases as when the ranges are founded on empirical analysis, the Court cannot give them the same weight with respect to retribution and general deterrence as it did in the original sentence when determining the appropriate sentence. The mandatory minimum sentence for this offense is 60 months. Based on the nature and circumstances of the offense as well as Defendant's characteristics, the Court cannot conclude he is among the least culpable of child pornography offenders. Defendant received approximately 3,300 images, including images and videos depicting prepubescent children and sadistic activity. He did not comply with the law even after he was indicted, but reoffended and attempted to hide or destroy the evidence. Defendant has strong support from his parents, but still

31

lacks support from his peers. If the Court sentenced Defendant at the mandatory minimum, there would be no means of distinguishing Defendant's conduct from that of substantially less culpable offenders, including, for example, the defendant in *Szymanski*, 2009 WL 1212252 (N.D. Ohio April 30, 2009), who viewed only 33 images while suffering from medical problems, voluntarily stopped viewing child pornography long before he was caught, provided the evidence used to prosecute him, and was genuinely remorseful. *Id.* at *3. While Defendant is not among the most egregious child pornography offenders, he is also not among the least. A sentence at or near the mandatory minimum in this case would fail to reflect the seriousness of the offense and provide specific and general deterrence.

After considering other cases and evaluating the individual facts of this case, the Court concludes a sentence of 78 months imprisonment is the lowest sentence available to meet the § 3553(a) factors. A longer sentence is unnecessary to protect the public from his future crimes, especially since Defendant appears committed to receiving treatment. In addition, the time in prison will deter Defendant from reoffending. Congress set the minimum sentence at 60 months and, taking into account the aggravating factors in this case, 78 months is sufficient to deter others from committing a similar offense. This sentence reflects the seriousness of the offense, protects the public, provides general deterrence, and affords Defendant needed treatment. It also avoids unwarranted sentencing disparities.

## V. CONCLUSION

Upon remand from the Sixth Circuit for resentencing in light of *Gall*, the Court finds 78 months imprisonment is "sufficient, but not greater than necessary," to meet the sentencing goals

of § 3553(a).  All other aspects of the Court's original judgment are unchanged.

A Judgment shall enter.


/s/_____
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**